The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John A. Hedrick and the briefs and oral arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. Accordingly, the Full Commission affirms and adopts the Deputy Commissioners decision and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing on 18 March 1999 as:
 STIPULATIONS
1. On the date of plaintiffs alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On that date, an employment relationship existed between plaintiff and defendant.
3. Plaintiff alleges that she has depression and anxiety and that these are occupational diseases contracted as a result of her employment with defendant.
4. Plaintiffs average weekly wage is $557.69.
5. Six exhibits identified in paragraph 7 of the parties Pre-Trial Agreement, marked as Stipulated Exhibits 2 through 7, are admitted into evidence.
6. Defendants Exhibits 1 through 22, except Defendants Exhibit 9, are admitted into evidence.
7. A set of plaintiffs medical records from Dr. Doman, received from defendants counsel on 24 May 1999, are admitted into evidence.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. Defendant hired plaintiff on 28 December 1994, as a Unit Administrator. At that time, Charles Newton, the Program Manager, was plaintiffs immediate supervisor. Mr. Newton continued to be plaintiffs supervisor for a period of approximately six months. Mr. Newton was then promoted and became Director of Stonewall Jackson School. Ms. Sarah Wilson became the Program Manager and assumed responsibility for supervising plaintiff.
2. At the time of her hiring, plaintiff possessed the minimum basic credentials required for an individual to be hired as a Unit Administrator. Based upon her experience and education, plaintiff was more well suited for a social work position. However, she received a strong recommendation from a member of the North Carolina General Assembly.
3. Stonewall Jackson School provided plaintiff with substantial training for her new position as a Unit Administrator. Defendant assigned another Unit Administrator, Mr. Thomas Dixon, to act as plaintiffs mentor and guide her in the performance of the duties of her position.
4. During the first six months of her employment by defendant, Mr. Newton began to detect deficiencies in plaintiff performance as a Unit Administrator. One of plaintiffs most significant shortcomings was her inability to accept guidance and supervision. Some of the deficiencies were noted in plaintiffs three-months and six-months evaluations.
5. On or about 16 May 1995, Charles Newton conducted a coaching and counseling session with plaintiff in an effort to improve her work performance. In her six months evaluation, Mr. Newton rated plaintiffs ability to work harmoniously and effectively with co-workers as "highly ineffective and cannot get along. Mr. Newton also determined that plaintiff had insufficient knowledge of some of the requirements of her position, that she resented supervision which adversely effected her job performance. Among several suggestions he made, Mr. Newton recommended that plaintiff improve her communication skills with junior employees and consult more with her supervisor when making decisions.
6. Plaintiff believed that Mr. Newtons evaluation of her performance constituted "character assassination based on gossip.
7. On 18 July 1995, Mr. Newton orally warned plaintiff about her personal conduct. Mr. Newton warned plaintiff for failing to correct inappropriate behaviors documented in plaintiffs six-months evaluation. He also warned her for soliciting a co-worker to provide false information to a loan officer who was processing plaintiffs application for an automobile loan. He also warned her for her attempting to obtain confidential information about a co-worker.
8. Plaintiff considered this warning "harassment [sic] as it pertains to me and not my job.
9. On or about 20 July 1995, Mr. Newton met with plaintiff and informed her that effective 1 August 1995 she was being transferred from the Unit Administrator position to the position of Social Worker III. This transfer did not affect her position classification or the amount of her salary. The Social Worker III position was a supervisory position and plaintiffs transfer to that position did not constitute a demotion. After the effective date of the transfer, Ms. Wilson continued to be plaintiffs direct supervisor.
10. On 4 January 1996, Ms. Wilson wrote plaintiff a letter documenting a recent coaching and counseling session she had with plaintiff regarding her job performance. This letter accurately documented the session and the shortcomings of plaintiffs job performance. In response to the coaching and counseling session, plaintiff wrote a letter to Ms. Gwendolyn Chunn, Director of Division of Youth Services of the Department of Health and Human Services. By her responsive letter, Ms. Chunn informed plaintiff that she concurred with her staffs assessments of plaintiffs work performance.
11. Despite the formal and informal counseling she received, plaintiffs work performance and cooperation with co-workers failed to improve. As a result, on 19 April 1996, Ms. Wilson issued a written warning to plaintiff for her unacceptable job performance. Plaintiffs work performance did not improve following her receipt of the written warning. As a result, on 6 May 1996, Ms. Wilson conducted another coaching and counseling session with plaintiff. The primary basis for this session was plaintiffs failure to follow defendants leave policies and her being absent from work when she had a negative leave balance.
12. On 13 June 1996, Ms. Wilson conducted her annual performance review evaluation of plaintiffs work performance. Ms. Wilson accurately evaluated plaintiffs overall performance during the evaluation period as being "below good. Ms. Wilsons evaluation accurately documented the numerous instances in which plaintiff failed to abide by defendants policies and procedures, failed to accept supervision and failed to improve her work performance after receiving coaching and counseling about her poor work performance. In response, plaintiff accused Ms. Wilson of harassment and slander, causing a decline in plaintiffs health, but not her work performance.
13. As a result of plaintiffs allegations, Mr. James Bowden, Assistant Director for Institutional Services in the Division of Youth Services, traveled from Raleigh to Concord, North Carolina to investigate plaintiffs complaints and review her 1996 performance evaluation. After meeting with plaintiff and receiving her responses to her evaluation, Mr. Bowden determined that plaintiffs allegations were untrue.
14. On 18 September 1996, plaintiff went to Ms. Wilsons office to request permission to take leave. The conversation between plaintiff and Ms. Wilson became confrontational. This encounter ended with plaintiff standing over Ms. Wilson saying, "[a]ll I can say is that you better watch your back. Ms. Wilson asked plaintiff whether she was making a threat. Plaintiff responded that she was making a promise, not a threat. As a result of the confrontation on 18 September 1996, Ms. Wilson wrote to plaintiff on 23 September 1996 and recommended that she seek assistance from the Employees Assistance Program.
15. Plaintiff last worked for defendant at Stonewall Jackson School on or about 6 November 1996. Plaintiff began being absent from work due to homiletic uremia syndrome on 9 November 1996. Plaintiff was hospitalized for treatment of this condition beginning 23 November 1996. Homiletic uremia syndrome is a condition of unknown cause wherein the human body suddenly begins to break down red blood cells and destroy them. It is a condition often associated with kidney failure. It may be a permanent condition. Some persons with this condition recover totally, some only partially. Plaintiff failed to prove that this condition was caused, aggravated or accelerated by her employment with defendant.
16. In January 1996, plaintiff received treatment for depression and anxiety from Dr. Hudson. Plaintiffs depression and anxiety were caused by her inability to satisfactorily perform her assigned duties for defendant, her physical illness and the untimely death of her husband.
17. There is no evidence of record that plaintiffs employment with defendant placed her at an increased risk of developing, contracting, aggravating or accelerating her depression and anxiety as compared to members of the general public not so employed.
18. Plaintiff began receiving short term disability beginning 6 January 1997. She received these benefits for one year at which time she began receiving extended short term disability benefits. She received these benefits through 5 January 1999. After these benefits were exhausted, Carol Brown, Acting Personnel Manager at Stonewall Jackson School, informed plaintiff that her extended short term disability benefits had been exhausted and she was required to return to work. On 18 January 1999, plaintiff resigned from her position at Stonewall Jackson School.
 ***********
Based upon the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff did not sustain an injury by accident arising out of and in the course of her employment with defendant. G.S. 97-2(6).
2. Plaintiffs homiletic uremia syndrome, depression and anxiety were not due to causes and conditions that were characteristic of or peculiar to her employment with defendant and, therefore, were not occupational diseases. G.S. 97-53(13).
3. Plaintiff is entitled to no compensation under the North Carolina Workers Compensation Act.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 ORDER
1. Under the law, plaintiffs claim must be, and the same is hereby, DENIED.
2. Each party shall bear its own costs, except that defendant shall pay expert witness fees of $700.00 and $350.00 for Drs. Rollins and Hudson, respectively.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________ DIANNE C. SELLERS COMMISSIONER
S/______________ RENE C. RIGGSBEE COMMISSIONER